

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Harlin DeWayne Hale*

**United States Bankruptcy Judge**

**Signed October 09, 2012**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| ENCORE PROPANE, LLC | § | CASE NO. 12-030505-HDH |
| | § | |
| Debtor. | § | CHAPTER 11 |
| | § | |
| | § | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING MCG VENTURE PARTNERS, L.P.' THIRD AMENDED PLAN OF REORGANIZATION FOR <u>ENCORE PROPANE, LLC</u>**

Upon consideration of MCG Venture Partners, L.P.'s Third Amended Plan of Reorganization for Encore Propane, LLC [Dkt. No. 228], (as may be further amended, modified, or supplemented from time to time, the "<u>Plan</u>") filed by MCG Venture Partners, L.P. ("<u>MCG</u>" or "<u>Proponent</u>") in the above-captioned case, and the Plan Supplement filed by MCG [Dkt. Nos. 227 & 229]; and objections to the Plan having been filed by: DCFS USA LLC Successor to DaimlerChrysler Financial Services Americas L.L.C. ("<u>DCFS</u>") [Dkt. No. 205]; and West End Holdings, L.L.C. ("<u>West End</u>") [Dkt. No. 199]; and no other objections to confirmation of the Plan having been filed or received; and a hearing to confirm the Plan having been held on

Confirmation Order

1

October 3, 2012 (the "Confirmation Hearing"); and this Court having reviewed all documents in connection with confirmation of the Plan and having heard all parties desiring to be heard at the Confirmation; and upon the record compiled in these cases; and after due deliberation and consideration of all of the foregoing; and sufficient cause appearing therefore; this Court hereby makes the findings of fact, conclusions of law and decrees set forth below.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:

A.    Capitalized Terms.  Capitalized terms used herein, but not defined herein, shall have the respective meanings attributed to such terms in the Plan.

B.    Findings and Conclusions.  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    Jurisdiction, Venue, Core Proceeding.  This Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. §§ 1334(a) and 157.  Venue of this proceeding and this Chapter 11 Case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of title 11 of the United States Code (11 U.S.C. §§ 101-1532, as amended, the "Bankruptcy Code") and should be confirmed.

D. _Commencement_. On January 28, 2012, Encore Propane, LLC ("Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor has continued to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

E. _Judicial Notice._ This Court takes judicial notice of the docket of this Chapter 11 Case maintained by the clerk of this Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before this Court during the pendency of this Chapter 11 Case.

F. _Transmittal of Solicitation Package_. On August 31, 2012, MCG caused the Disclosure Statement and the Plan (attached as an exhibit to the Disclosure Statement) and the appropriate Ballot (together, a "Solicitation Package") to be served and distributed as required by sections 1125 and 1126 of the Bankruptcy Code, Rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules"), all other applicable provisions of the Bankruptcy Code, the Order (A) Approving MCG Venture Partners, L.P.'s Disclosure Statement, (B) Establishing Voting Deadline and Other Dates, (C) Approving Procedures for Soliciting, Receiving and Tabulating Votes on the Plan and for Filing Objections to the Plan and (D) Approving the Manner and Forms of Notice and Other Related Documents signed on August 31, 2012 (the "Disclosure Statement Order") [Dkt No. 197], and all other applicable rules, laws, and regulations applicable to such solicitation. _See_ Certificate of Service [Dkt. No. 219]. Such transmittal and service was adequate and sufficient under the circumstances and no other or further notice is or shall be required.

G.      The Plan and Disclosure Statement were transmitted to all creditors entitled to vote on the Plan.  The Disclosure Statement, Plan, and Ballots were transmitted and served in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, including Rule 3017(d), the Local Rules, the Disclosure Statement Order and all other applicable rules, laws, and regulations. Such transmittal and service was adequate and sufficient under the circumstances and no other or further notice is or shall be required.

H.      Notice of Confirmation Hearing.  On September 10, 2012, MCG filed with the Court and served upon the parties in interest in this Bankruptcy Case the Amended Notice of Hearing on Confirmation of Competing Plans of Reorganization for Encore Propane, LLC (the "Confirmation Hearing Notice") [Dkt. No. 194].  MCG has given proper, adequate and sufficient notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d).  Due, adequate, and sufficient notice of the Plan, along with deadlines for filing objections to the Plan, has been given to all known holders of Claims and Interests substantially in accordance with procedures set forth in the Disclosure Statement Order. Notice was adequate and no other or further notice is or shall be required.

I.      Plan Supplement.  On October 2, 2012, MCG filed certain exhibits to the Plan Supplement [Dkt. Nos. 227 & 229], including (a) the Exit Facility and related documents; (b) the Reorganized Debtor Company Agreement; (c) a list of proposed Cure Costs for Executory Contracts that the Reorganized Debtor will assume pursuant to the Plan; and (d) the Plan Settlement Agreement.  All materials included in the Plan Supplement are integral to, part of and incorporated by reference into the Plan.  The Plan Supplement complies with the terms of the Plan, and the filing and notice of such documents is good and proper in accordance with the

Bankruptcy Code, the Bankruptcy Rules and the Local Rules and no other or further notice is necessary.

J.      <u>Modification to the Plan</u>.  Subsequent to solicitation, MCG made certain non-material modifications to the Plan.  All modifications to the Plan are consistent with all the provisions of the Bankruptcy Code, including, but not limited to, sections 1122, 1123, 1125 and 1127 of the Bankruptcy Code, including any modifications disclosed on the record at the Confirmation Hearing.  Except as provided for by law, contract or prior order of the Bankruptcy Court, none of the modifications made since the commencement of solicitation adversely affects the treatment of any Holder of a Claim or Interest under the Plan.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019(a), none of the modifications requires additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code.

K.      <u>Objections.</u>  As part of the Plan Settlement, West End withdrew its objection to the Plan on October 2, 2012.  All other objections and all reservations of rights that have not been withdrawn, waived or settled pertaining to the Plan are overruled on the merits.

L.      <u>Solicitation.</u>  The solicitation of acceptances and rejections of the Plan was exempt from the registration requirements of the Securities Act and applicable state and local securities laws, and no other non-bankruptcy law applies to the solicitation.  The Disclosure Statement contains adequate information within the meaning of, and for all purposes under, sections 1125 and 1126(b) of the Bankruptcy Code.  Votes for acceptances or rejections of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and all other applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other rules, laws and regulations.

M.      The solicitation of votes to accept or reject the Plan satisfies Bankruptcy Rule 3018. The Plan and Disclosure Statement were transmitted to all creditors entitled to vote on the Plan and sufficient time was prescribed for such creditors to accept or reject the Plan. The solicitation materials and solicitation procedures comply with section 1126 of the Bankruptcy Code, thereby satisfying the requirements of Bankruptcy Rule 3018.

N.      MCG's procedures for transmitting the Disclosure Statement, the Plan, the Ballots, and the voting instructions are adequate and comply with the requirements of Bankruptcy Rule 3017(d) and (e), all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order and all other applicable rules, laws, and regulations.

O.      The forms of the Ballots were adequate and appropriate and complied with Bankruptcy Rule 3017. The forms of the Ballots were sufficiently consistent with Official Form No. 14 and adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for the Classes entitled to vote to accept or reject the Plan.

P.      The establishment of the Voting Deadline for Classes 1 and 10 as September 19, 2012 at 4:00 p.m. C.S.T. was reasonable under Bankruptcy Rule 3018(b) and did not prescribe an unreasonably short time for creditors to accept or reject the Plan.

Q.      Due, adequate, and sufficient notice of the Plan, and the Confirmation Hearing, along with deadlines for voting on the Plan, has been given to all known holders of Claims entitled to vote on the Plan. No other or further notice is or shall be required.

R.    <u>Tabulation of Votes</u>.  Pursuant to the Disclosure Statement Order, Wick Phillips Gould & Martin LLP ("<u>WPGM</u>") was appointed as the Voting Agent to assist with the voting process on the Plan.  On October 2, 2012, WPGM filed the Certification of Ballot Summary, certifying the method and results of the ballot tabulation for each of the Classes entitled to vote under the Plan.  As set forth in the Certification of Ballot Summary, votes to accept and reject the Plan have been tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and industry practice.  Classes 1 and 10 both voted to accept the Plan.

S.    <u>Classes Deemed to Have Accepted the Plan</u>.  Classes 2 – 9 are not Impaired under the Plan.  Accordingly, each holder of a Claim in such Classes is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

T.    <u>Classes Deemed to Have Rejected the Plan</u>.  Classes 11(A) – 11(C) are Impaired. Each holder of an Interest in such Classes will not receive or retain any property under the Plan on account of such Interest and accordingly, is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

U.    <u>Burden of Proof</u>.  As more fully set forth herein, MCG, as proponent of the Plan, has met its burden of proving the elements of section 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for confirmation of the Plan.

V.    <u>Bankruptcy Rule 3016</u>.  The Plan (including all modifications thereof) is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

W.    <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the

Confirmation Order

Local Bankruptcy Rules and the applicable orders of this Court, thus satisfying the requirements of section 1129(a)(1) of the Bankruptcy Code.

    a. <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).</u> The Plan adequately and properly identifies and classifies all Claims and Interests. The Claims and Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in such Class, and such classification is therefore consistent with section 1122 of the Bankruptcy Code. Accordingly, the Plan satisfies section 1123(a)(1) of the Bankruptcy Code.

    b. <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).</u> The Plan specifies that Classes 2 – 9 are not Impaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

    c. <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).</u> The Plan specifies that Classes 1, 10, and 11(A) – 11(C) are Impaired under the Plan, and specifies the treatment of the Impaired Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

    d. <u>No Discrimination (11 U.S.C. § 1123(a)(4)).</u> The Plan provides the same treatment for Claims and Interests in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

    e. <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5)).</u> The Plan provides adequate means for its implementation, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

Confirmation Order

f. <u>Non-Voting Equity Securities / Allocation of Voting Power (11 U.S.C. § 1123(a)(6))</u>. To the extent that section 1123(a)(6) is applicable to the Reorganized Debtor, the Reorganized Debtor Company Agreement satisfies section 1123(a)(6) with respect to the issuance of nonvoting equity securities and an appropriate distribution of voting power among securities possessing voting power.

g. <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>. The provisions in the Reorganized Debtor Company Agreement with respect to the manner of selection of any officer or manager of the Reorganized Debtor are consistent with the interests of creditors and equity security holders and with public policy.

h. <u>Earnings from Personal Services (11 U.S.C. § 1123(a)(8))</u>. Section 1123(a)(8) of the Bankruptcy Code applies only to individual debtors and is not applicable in this Chapter 11 Case.

i. <u>Impairment / Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1))</u>. As permitted by section 1123(b)(1) of the Bankruptcy Code, Article V of the Plan designates Classes 1, 10 and 11(A) – 11(C) as Impaired.

j. <u>Assumption and Rejection (11 U.S.C. § 1123(b)(2))</u>. Article VIII of the Plan governs the assumption and rejection of Executory Contracts and Unexpired Leases and meets the requirements of section 365(b) of the Bankruptcy Code.

k. <u>Preservation of Causes of Action (11 U.S.C. § 1123(b)(3))</u>. Article XI of the Plan provides for the reservation, to the extent they exist, of Causes of Action not expressly settled or released under the Plan, which Causes of Action shall vest in the Reorganized Debtor on the Effective Date.

Confirmation Order

l.  Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).  Each of the provisions of the Plan is appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, among other things, (i) an exemption pursuant to section 1145 of the Bankruptcy Code for the issuance and distribution of the Class A Senior Reorganized Debtor Equity to those holders of Allowed Unsecured Claims and Allowed Priority Non-Tax Claims who elect to convert all or some portion of their Allowed Claims to Class A Senior Reorganized Debtor Equity under Treatment B of Class 10 under the Plan, and the issuance of Class B Reorganized Debtor Equity to such holders; and (ii) an exemption pursuant to section 1146 of the Bankruptcy Code for any issuance, transfer, or exchange of any security under the Plan, including, but not limited to, any of the documents in connection with the Exit Facility, or the making or delivery of any instrument of transfer under the Plan.

m.  Cure of Defaults ((11 U.S.C. § 1123(d)).  As required by section 365(b)(1) of the Bankruptcy Code, any monetary defaults under any executory contract or unexpired lease to be assumed under the Plan will be satisfied by the Reorganized Debtor paying the Cure Costs.

X.  Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2).  The Plan satisfies section 1129(a)(2) of the Bankruptcy Code because MCG, as the proponent of the Plan, has complied with the applicable provisions of the Bankruptcy Code.

Y.  Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Plan has been proposed in good faith and not by any means forbidden by law.  MCG has proposed the Plan with the legitimate and honest purpose of reorganizing and maintaining the Debtor's business as

a going concern and maximizing the distribution to its creditors. The Plan provides for a fair allocation of the Debtors' assets in an orderly manner, consistent with the mandates of the Bankruptcy Code and other applicable laws. The Plan also provides the means through which the Debtor will emerge as a viable entity. The Plan, therefore, complies with section 1129(a)(3) of the Bankruptcy Code.

Z. <u>Payment for Services or Costs and Expenses ((11 U.S.C. § 1129(a)(4)).</u> The Plan satisfies section 1129(a)(4) of the Bankruptcy Code as any payments made or promised by the Reorganized Debtor, or a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, this Chapter 11 Case, or in connection with the Plan and incident to the case, have been approved by, or are subject to approval of this Court as reasonable.

AA. <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).</u> The Plan satisfies section 1129(a)(5) of the Bankruptcy Code as the identity and affiliations of the persons proposed to serve as the initial managers and officers of the Reorganized Debtor after Confirmation of the Plan have been fully disclosed to the extent such information is available, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of the holders of Claims against and Interests in the Debtor and with public policy.

BB. <u>No Rate Changes (11 U.S.C. § 1129(a)(6)).</u> The provisions of section 1129(a)(6) of the Bankruptcy Code are inapplicable to this Chapter 11 Case because, after the Effective Date, there are no rate changes provided for in the Plan for which a governmental regulatory commission will have jurisdiction over the Reorganized Debtor.

CC. <u>Best Interest of the Creditors (11 U.S.C. § 1129(a)(7)).</u> The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. Each holder of an Impaired Claim or an Interest has

accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

DD.     Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Section 1129(a)(8) of the Bankruptcy Code requires that each Class of Claims or Interests under the Plan has either accepted the Plan or is not Impaired under the Plan.  Unimpaired Classes 2 – 9 are conclusively presumed to have accepted the Plan without the solicitation of acceptances or rejections pursuant to section 1126(f) of the Bankruptcy Code.  Impaired Classes 1 and 10 have accepted the Plan. Classes 11(A) – 11(C) are Impaired and deemed to have rejected the Plan.

EE.     Treatment of Administrative Expense Claims, Priority Tax Claims, and Priority Unsecured Claims (11 U.S.C. § 1129(a)(9)).  Except to the extent that the holder of a Claim of the type specified in sections 507(a)(1)-507(a)(8) of the Bankruptcy Code has agreed to a different treatment of such Claim, the Plan treatment of such Claims, if any, complies with the provisions of section 1129(a)(9) of the Bankruptcy Code.

FF.     Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). Section 1129(a)(10) of the Bankruptcy Code is satisfied because Impaired Classes 1 and 10 have accepted the Plan, and therefore at least one Impaired Class of Claims has accepted the Plan, as determined without including any acceptances of the Plan by any insider.

GG.     Feasibility (11 U.S.C. § 1129(a)(11)).  The evidence proffered, adduced and/or presented at the Confirmation Hearing with respect to the showing required by section 1129(a)(11) of the Bankruptcy Code:   (a) is persuasive and credible; (b) has not been controverted by other evidence; and (c) establishes that the Plan is feasible and that there is a

reasonable prospect of the Reorganized Debtor being able to meet its financial obligations under the Plan and in the ordinary course of its business, and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. Accordingly, the Plan is feasible and complies with section 1129(a)(11) of the Bankruptcy Code.

HH. <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. Section 1129(a)(12) of the Bankruptcy Code is satisfied as all fees payable under section 1930 of title 28 of the United States Code have either been paid or will be paid under the Plan until entry of a final decree with respect to the Chapter 11 Cases.

II. <u>Continuation of Retiree Benefits (11 U.S.C § 1129(a)(13))</u>. The Debtor did not provide for any retiree benefits as defined in section 1114(a) of the Bankruptcy Code, and section 1129(a)(13) of the Bankruptcy Code is therefore not applicable.

JJ. <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>. The Debtor is not an individual. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable to this Chapter 11 Case.

KK. <u>Debtor Is Not An Individual (11 U.S.C. § 1129(a)(15))</u>. The Debtor is not an individual and, accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to this Chapter 11 Case.

LL. <u>No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>. The Reorganized Debtor is a moneyed, business, or commercial corporation and, accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable to this Chapter 11 Case.

MM. <u>Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b))</u>. Holders of Interests in Classes 11(A) – 11(C) (the "<u>Rejecting Classes</u>") are deemed to have not accepted the Plan. Based upon the evidence proffered, adduced, and presented by MCG at the Confirmation

Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code.  Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by these Classes. After entry of the Confirmation Order and upon consummation of the Plan, the Plan shall be binding upon the members of the Rejecting Classes.

NN.    The Plan does not unfairly discriminate because members within each Class are treated similarly. Thus, the Plan does not discriminate unfairly in respect to the Rejecting Classes or any other Class of Claims or Interests.

OO.    Accordingly, the Plan is fair and equitable and does not discriminate unfairly, as required by section 1129(b) of the Bankruptcy Code, and may be confirmed under Bankruptcy Code section 1129(b) notwithstanding the Rejecting Classes' deemed rejection of the Plan.

PP.    Only One Plan (11 U.S.C. § 1129(c)). There is only one plan being confirmed in this Chapter 11 Case.  West End withdrew the West End Plan on October 2, 2012.  Thus, the Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.

QQ.    Principal Purpose of the Plan (11 U.S.C. § 1129(d)).  The primary purpose of the Plan is not the avoidance of taxes or the requirements of Section 5 of the Securities Act.  Thus, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

RR.    Retention of Jurisdiction. This Court finds that it may properly retain jurisdiction over the matters set forth in the Plan and this Confirmation Order and exercise its authority under section 1142 of the Bankruptcy Code to direct the Debtor, Reorganized Debtor or any other party to execute or deliver any document or to perform any other act that is necessary for the consummation of the Plan.

SS.    <u>The Exit Facility.</u>    The Exit Facility is an essential element of the Plan, was proposed in good faith, is critical to the success and feasibility of the Plan and is necessary and appropriate for the consummation of the Plan, and entry into the Exit Facility is in the best interests of the Debtor, its estate and creditors, and the Reorganized Debtor.  The Exit Lender and its respective agents and affiliates participated in good faith, arms'-length negotiations with respect to the Exit Facility and all other contracts, instruments, agreements and documents to be executed and delivered in connection therewith (including, but not limited to, the note and warrant purchase agreement, the warrant, the promissory note, the Exit Facility Agreement, any pledge and security agreements, any mortgages, any exhibits and schedules to any agreements, UCC financing statements, deposit account control agreements or other perfection documents, any subordination agreements, intercreditor agreements, collectively, the "<u>Exit Financing Documents</u>"), and any credit extended, or loans made to, the Reorganized Debtor by the Exit Lender pursuant to the Exit Facility shall be deemed to have been extended, issued and made in good faith and for legitimate business purposes.  The Exit Lender and its respective agents, affiliates, officers, directors, employees, advisors, and counsel are therefore entitled to the protections and indemnifications provided for in the Plan and the Exit Financing Documents. The Reorganized Debtor is hereby authorized, without further approval of this Court or notice to any other party, to execute and deliver the Exit Financing Documents and fully perform its obligations thereunder; provided, however, that Compass shall approve of the form of such Exit Financing Documents before their execution.  The Exit Financing Documents (when and to the extent entered into) will be, and are hereby deemed to be, valid, binding and enforceable against the Reorganized Debtor in accordance with their terms.  The mortgages, pledges, Liens and other security interests, and all other consideration granted pursuant to or in connection with the Exit

Confirmation Order

Facility are or will be (as the case may be) and are hereby deemed to be granted in good faith, for good and valuable consideration and for legitimate business purposes as an inducement to the Exit Lender to extend credit thereunder and do not, and hereby are deemed not to, constitute fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance or recharacterization. The Exit Financing Documents do not contravene the Reorganized Debtor Company Agreement or constitute a violation of, a default under, or otherwise contravene any other instrument, contract or agreement to which the Reorganized Debtor is a party. The execution and delivery by the Reorganized Debtor of any of the Exit Financing Documents and the performance by the Reorganized Debtor of its obligations thereunder do not constitute a violation of or a default under any contract or agreement to which it is a party, including those contracts or agreements reinstated under the Plan.

TT.    Executory Contracts.  Each assumption of an Executory Contract or Unexpired Lease pursuant to Article VIII of the Plan shall be legal, valid and binding upon the Debtor or Reorganized Debtor and its assignees or successors and all non-Debtor parties (and their assignees or successors) to such Executory Contract or Unexpired Lease, all to the same extent as if such assumption had been effectuated pursuant to an order of the Court entered before the date of the entry of this Confirmation Order (the "Confirmation Date") under section 365 of the Bankruptcy Code.

UU.    Exculpation of Proponent's Professionals.  This Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the exculpation set forth in section 13.8 of the Plan. Such provision is fair and reasonable and is in the best interests of the Debtor, its Estate and parties in interest. Further, the exculpation provision in the Plan does not relieve any party of liability for an act or omission to the extent such act or omission is

16

determined by a final order to have constituted willful misconduct or gross negligence. All holders of Claims and Interests received adequate notice of such provision and had sufficient opportunity to object to such provision.

VV. <u>Transfers by Debtors</u>. The vesting in the Reorganized Debtor on the Effective Date of the property of the Debtors' Estate, together with any property of the Debtor that is not property of its Estate and that is not specifically disposed of pursuant to the Plan (a) is a legal, valid, and effective transfer of property, (b) vests the Reorganized Debtor with good title to such property free and clear of all Liens, Claims, and Interests, except as specifically provided in the Plan, this Confirmation Order or as contemplated by the Exit Facility and the Exit Financing Documents, (c) does not constitute an avoidable transfer under the Bankruptcy Code or under applicable nonbankruptcy laws, and (d) does not and shall not subject the Reorganized Debtor to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law.

WW. <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

<u>DECREES</u>

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

1. <u>Confirmation</u>. The Plan and all transactions contemplated by the Plan are hereby approved and CONFIRMED in each and every respect pursuant to section 1129 of the Bankruptcy Code; *provided, however*, that if there is any conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control. All other documents and agreements introduced into evidence at the Confirmation Hearing (including all exhibits and attachments to the Plan), are authorized and approved. The

documents contained in the Plan Supplement, as amended, are authorized and approved; and any amendments, modifications and supplements thereto permitted by the Plan and this Confirmation Order and all documents and agreements introduced into evidence by MCG at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Reorganized Debtor, are authorized and approved when they are finalized, executed and delivered. Without further order or authorization of this Court, MCG, the Reorganized Debtor, and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan to the extent necessary to implement the Plan. The modification of the documents contained in the Plan Supplement does not constitute a material modification of the Plan.

2.      <u>Confirmation Objections</u>.   All parties have had a full and fair opportunity to litigate all issues raised, or that might have been raised, by any objections, including, without limitation, any objections that could have been raised to any documents contained in the Plan Supplement or related thereto, and any and all comments thereto have been considered by the Bankruptcy Court. To the extent that any objections to confirmation of the Plan have not been withdrawn prior to entry of this Confirmation Order, are not cured by the relief granted herein or resolved as stated on the record of the Confirmation Hearing, all such objections, including, but not limited to any objections set forth in the Debtor's Comments and Reservation of Rights Regarding Plan Confirmation [Dkt. No. 207] shall be, and hereby are, overruled.

3.      <u>Immediate Effectiveness</u>.   The Debtor and Reorganized Debtor are hereby authorized to consummate the Plan and any transaction contemplated thereunder at any time following entry of this Confirmation Order. Notwithstanding the stay contemplated by

Bankruptcy Rule 3020(e) and except as otherwise provided in section 1141(d) of the Bankruptcy Code, immediately after entry of this Confirmation Order, the provisions of the Plan (as of the Effective Date) and this Confirmation Order shall be deemed binding. Accordingly, as permitted by Bankruptcy Rule 3020(e), the fourteen (14) day period provided by such Rule is hereby waived in its entirety.

4. <u>Approval of Initial Managers of the Reorganized Debtor</u>.

(a) Under section 1129(a)(5)(A)(ii) of the Bankruptcy Code, this Court approves, consistent with the interests of holders of Claims and Interests and with public policy, the selection of Thomas Montgomery and Thomas Stikeleather as the Class A managers of the Reorganized Debtor as of the Effective Date.

(b) On the Effective Date, (i) each existing manager of the Debtor shall be deemed to have resigned and (ii) the operation of the Reorganized Debtor shall become the general responsibility of the managers of the Reorganized Debtor, subject to, and in accordance with, the Reorganized Debtor Company Agreement, which is hereby approved.

5. <u>Plan Classification Controlling</u>. The classifications of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.

6. <u>Administrative Claims Bar Date</u>. The Administrative Claims Bar Date for filing Administrative Claims shall be the first Business Day that is thirty (30) days after the Effective Date. The Administrative Claims Bar Date shall be applicable to the holders of asserted Administrative Claims, including Substantial Contribution Claims, Professional Fee Claims,

Confirmation Order

DIP Lender Fee Claims, and MCG Professional Fee Claims. Holders of asserted Administrative Claims, other than claims for U.S. Trustee fees under 28 U.S.C. § 1930 and Administrative Ordinary Course liabilities, must File a request for an Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so. Nothing herein extends any bar dates previously established in this Chapter 11 Case, all of which remain in effect. The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) shall set forth the Administrative Claims Bar Date and shall constitute adequate notice of such date. The Reorganized Debtor shall have until the first Business Day following the later of (i) twenty-four (24) days following the filing of a request for an Administrative Claim; or (ii) such other date as may be established by an order of this Court to object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

7.     Rejection Claims Bar Date.  The bar date for the filing of Rejection Claims shall be the first Business Day that is thirty (30) days after the date of the entry of the Order approving the rejection of the Executory Contract or Unexpired Lease.  Holders of Rejection Claims must file a Claim on or before such Rejection Claims Bar Date or be forever barred from doing so. The Reorganized Debtor shall have until the later of (i) sixty (60) days following the Effective Date; (ii) twenty-four (24) days following the filing of a Rejection Claim; or (iii) such other date as may be established by an order of this Court to object to such Rejection Claim before a hearing for determination of allowance of such Rejection Claim.

8.     No Extension of Previous Bar Dates.  Nothing herein extends any bar date previously established in the Debtor's chapter 11 case.

9.     Compromise and Settlement of Claims and Controversies.  Pursuant to sections 105, 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, the Court hereby

approves the Settlement Agreement incorporated in Article VI of the Plan and filed as a Plan Supplement [Dkt. No. 229]. The Settlement Agreement is in the best interests of the Debtor, its Estate, the Reorganized Debtor, and holders of Claims and Interests and is fair, equitable, and reasonable. Notwithstanding any provision herein, the Plan, the Plan Supplement, or the Settlement Agreement, (a) on or before 5:00 p.m. (CDT) on October 11, 2012, West End shall provide to the Office of the United States Trustee West End's statements of legal fees and expenses in support of the Allowed DIP Lender Fee Claim in the amount of $30,000.00 that is proposed to be awarded to West End under the Settlement Agreement; and (b) within ten (10) days of West End providing such statements of legal fees and expenses, the United States Trustee shall file any objection to the Allowed DIP Lender Fee Claim (the "UST Objection Deadline"). If the United States Trustee files a timely objection to the Allowed DIP Lender Fee Claim, the Court shall determine the allowed amount of such claim after notice and hearing, and the Reorganized Debtor shall pay to West End the allowed amount of such claim no later than three (3) Business Days of any Order allowing such claim becoming a final, non-appealable Order. If (c) an objection is not timely filed by the United States Trustee to the Allowed DIP Lender Fee Claim; and (d) the Effective Date has passed, then the Reorganized Debtor shall pay the Allowed DIP Lender Fee Claim in the amount of $30,000.00 within one (1) Business Day of the UST Objection Deadline; but if the Effective Date has not passed, then the Reorganized Debtor shall pay the Allowed DIP Lender Fee Claim in the amount of $30,000.00 on the Effective Date. If, prior to the UST Objection Deadline, (e) the United States Trustee confirms in writing to counsel for West End, MCG, and the Reorganized Debtor, that it has no objection to the Allowed DIP Lender Fee Claim in the amount of $30,000.00; and (f) the Effective Date has passed, then the Reorganized Debtor shall pay the Allowed DIP Lender Fee Claim in the amount

Confirmation Order

of $30,000.00 within one (1) Business Day of such written notice by the United States Trustee; but if the Effective Date has not passed, then the Reorganized Debtor shall pay the Allowed DIP Lender Fee Claim in the amount of $30,000.00 on the Effective Date.

10. <u>Exit Facility</u>. The form of the Exit Facility filed as a Plan Supplement is approved, and the Reorganized Debtor is authorized to (a) make further amendments and modifications to the Exit Facility, provided that all such amendments and modifications are consistent with the Plan; (b) enter into the Exit Facility and the Exit Financing Documents and grant collateral security required thereunder; and (c) execute and make such security agreements, mortgages, control agreements, intercreditor agreements, certificates and other documents and deliveries as the Exit Lender and Compass reasonably request. The Exit Financing Documents, including those granting collateral security required thereunder, shall constitute legal, valid, binding and authorized obligations of the Reorganized Debtor, enforceable in accordance with their terms, and all creditors (existing and hereafter) are and shall be bound thereby. Notwithstanding the foregoing, the Section 7.1(v) of the Plan shall be replaced with the following paragraph:

Principal and interest payments on the Exit Facility shall only be paid during the months subsequent to the end of any quarter in which the Reorganized Debtor's actual gross profit amount is at least 80% of the amount indicated on MCG's projections (the "80% Test"), as attached to the MCG Disclosure Statement as Exhibit "D" ("Projections" specifically the "gross margin" line item on the "Prospective Quarterly Statement of Operations" which are projected on a cumulative basis, building quarter by quarter, such that all quarterly projections build on the prior projections). In the event the Reorganized Debtor fails to satisfy the 80% Test for any quarter, then the following three months' principal and interest amounts applicable to the Exit Facility shall accrue, but shall not be paid until maturity as part of the Exit Facility balloon payment, and may only be paid as part of such balloon payment as long as: (i) the Reorganized Debtor has a gross profit (based on the "gross margin" line item on the "Prospective Quarterly Statement of Operations") of $1,000,000 for the quarter ending prior to the maturity of the Exit Facility; and (ii) such balloon payment, whether paid in full, including any deferred and accrued payment(s), or paid in part, leaves the Reorganized Debtor with at least a $50,000 cash balance after such balloon payment. The 80% Test calculation shall commence on the quarter ending December 31, 2012. Failure to meet the 80% Test for any given quarter shall not preclude the

Confirmation Order

Reorganized Debtor from satisfying the 80% Test in future quarters and paying principal and interest on the Exit Facility applicable to the following three months (as opposed to any prior months). For example, if the quarter ending September 30, 2013 has actual gross profit of $450,000 as compared to the "gross margin" line item of $812,064, which fails the 80% Test, then no principal or interest upon the Exit Facility shall be paid October, November or December, 2013. If the Reorganized Debtor then has a gross profit of $860,000 by quarter ending December, 2013, then the Reorganized Debtor has satisfied the 80% Test and may pay principal and interest on the Exit Facility on January, February and March, 2014.

The Reorganized Debtor and Exit Lender shall execute an Intercreditor Agreement, the form of which shall be acceptable to Compass in its sole discretion. The Intercreditor Agreement shall include the standard provisions generally found in such agreements, including that the Exit Lender shall not be allowed to exercise any rights or remedies until Compass is paid in full.

11. <u>Exit Financing Documents</u>. Pursuant to section 1142(b) of the Bankruptcy Code, and without further action by this Court, or by the managers of the Reorganized Debtor, any manager or officer of the Reorganized Debtor is authorized to: (a) enter into, execute and deliver all Exit Financing Documents necessary or appropriate to enter into and perform all obligations under the Exit Credit Facility, and (b) to take all other actions and execute, deliver, record and file all such other agreements, documents, instruments, financing statements, security agreements, mortgages, releases, applications, reports, certificates and any changes, additions and/or modifications thereto in connection with the consummation of the transactions contemplated by the Exit Financing Documents, including, without limitation, the making of such filings or the recordings of such liens and security interests, as may be required by the Exit Financing Documents and/or as the Exit Lender may determine or require in its reasonable discretion. On the Effective Date, all Exit Financing Documents (other than those documents contemplated to be entered into after the Effective Date) shall become effective, binding, and enforceable upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to become effective simultaneously. Each and every federal, state, and local governmental agency or department is hereby directed to accept for filing and recording any and

Confirmation Order

all documents, mortgages, security agreements, financing statements and instruments necessary or appropriate to consummate the transactions contemplated by the Exit Financing Documents.

12. <u>Exit Financing Liens</u>. After the payment to the DIP Lender of the DIP Lender Principal and Interest and the Allowed DIP Lender Fee Claim in accordance with the Plan, the security interests and liens granted pursuant to, or in connection with, the Exit Credit Facility and the Exit Financing Documents shall constitute, as of the Effective Date, legal, valid, binding and duly perfected liens on and security interests in the Collateral in favor of the Exit Lender. On the Effective Date, all of the liens and security interests to be created under, or in connection with, the Exit Financing Documents shall be deemed created, shall be legal, valid, binding and perfected. Notwithstanding the foregoing, the Reorganized Debtor and the Exit Lender are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of state or federal law that would be applicable in the absence of this Confirmation Order, and will thereafter make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

13. <u>Cancellation of Old Equity Interests</u>. In accordance with section 5.11 of the Plan, the existing equity interests of the Debtor, including the Class A Preferred Debtor Equity (Class 11A), the Class B Preferred Debtor Equity (Class 11B), and the Class C Debtor Equity (Class 11C) shall be deemed cancelled on the Effective Date.

14. <u>Issuance of Class A Senior Reorganized Debtor Equity, the Class B Reorganized Debtor Equity, and the Warrants to Purchase 10% of the Class B Reorganized Debtor Equity</u>. The Reorganized Debtor is authorized to issue the Class A Senior Reorganized Debtor Equity to (i) the New Investor Group in accordance with section 5.11 of the Plan; (ii) Thomas D.

Stikeleather, on account of his Priority Non-Tax Claim in the amount of $11,725.00 that will be converted to Class A Senior Reorganized Debtor Equity in accordance with section 4.3 of the Plan, and any other Holders of Allowed Priority Non-Tax Claims that elect to convert their Claims into Class A Senior Reorganized Debtor Equity in accordance with section 4.3 of the Plan and this Confirmation Order; and (iii) the Prior Funding Group, on account of their Scheduled Claims in the amount of $375,000, Thomas D. Stikeleather, with respect to $250,000.00 of his $336,625.00 Scheduled Claim on Schedule F, Montgomery Coscia Greilich LLP, with respect to its $41,505.00 Scheduled Claim, and any other Holders of Allowed Unsecured Claims that elect to convert their Claims into Class A Senior Reorganized Debtor Equity in accordance with section 5.10 of the Plan. The Reorganized Debtor is further authorized to issue Class B Reorganized Debtor Equity to (i) the Class A members of the Reorganized Debtor in accordance with section 5.11 of the Plan; and (ii) to the managers of the Reorganized Debtor pursuant to any management incentive plan in accordance with section 7.7 of the Plan. In addition, the Reorganized Debtor is authorized to issue warrants to purchase 10% of the Class B Reorganized Debtor Equity to the Exit Lender in accordance with section 7.1 of the Plan.

      15.   <u>Exemption from Registration</u>. Pursuant to section 1145 of the Bankruptcy Code, the (a) the issuance and distribution of the Class A Senior Reorganized Debtor Equity to those holders of Allowed Unsecured Claims and Allowed Priority Non-Tax Claims who elect to convert all or some portion of their Allowed Unsecured Claim or Allowed Priority Non-Tax Claim to Class A Senior Reorganized Debtor Equity under the Plan, and the issuance of Class B Reorganized Debtor Equity to such holders shall be exempt from, among other things, the

Confirmation Order

registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution or sale of securities.

16. <u>Continued Existence and Vesting of Assets in the Reorganized Debtor</u>. The Debtor shall continue to exist after the Effective Date as the Reorganized Debtor in accordance with the applicable law for the State of Texas and pursuant to the Reorganized Debtor Company Agreement. On and after the Effective Date, all property of the Debtor's Estate, and any property acquired by the Debtor under or in connection with the Plan, shall vest in the Reorganized Debtor free and clear of all Claims, Interests, liens, charges, other encumbrances, and interests except as otherwise expressly provided in the Plan or this Confirmation Order, including the Exit Facility Documents. On and after the Effective Date, the Reorganized Debtor may operate its businesses and may use, acquire and dispose of property and compromise or settle any Causes of Action without supervision of or approval by this Court and free and clear of any restrictions of the Bankruptcy Code or Bankruptcy Rules other than restrictions expressly imposed by the Plan or this Confirmation Order. Without limiting the foregoing, the Reorganized Debtor may pay charges that it incurs on and after the Effective Date for professionals' fees, disbursements, expenses or related support services without application to this Court.

17. <u>General Authorizations</u>. Pursuant to section 1142(b) of the Bankruptcy Code and any comparable provision of the Texas Business Organization Code, without further action by this Court or the members, managers or officers of the Debtor or Reorganized Debtor, the Debtor, the Reorganized Debtor and the responsible managers and officers of the Debtor or Reorganized Debtor, as applicable, are authorized to, empowered to and ordered to: (i) take any and all actions and perform such acts as may be necessary, desirable or appropriate to implement, effectuate and consummate the Plan, this Confirmation Order or the transactions

Confirmation Order

contemplated thereby or hereby, and (ii) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements and documents necessary to implement, effectuate and consummate the Plan, including without limitation, the Exit Financing Documents.   To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the members or managers of the Debtor or Reorganized Debtor, as applicable, this Confirmation Order shall constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the members and managers of the Debtor or Reorganized Debtor pursuant to section 1142 of the Bankruptcy Code and any applicable state law provisions.   The form of the Reorganized Debtor Company Agreement, substantially in the form as filed with the Plan and/or Plan Supplement, satisfy the provisions of the Plan and the Bankruptcy Code, and is hereby approved.

18.   <u>Corporate Action</u>.   Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (i) the appointment of Thomas D. Stikeleather and Thomas Montgomery as Class A Managers of the Reorganized Debtor; (ii) the execution of and entry into the Exit Facility and the Exit Financing Documents; (iii) the issuance of the Class A Senior Reorganized Debtor Equity, the Class B Reorganized Debtor Equity, and the warrants to the Exit Lender to purchase 10% of the Class B Reorganized Debtor Equity in accordance with the Plan; and (iv) all other actions contemplated by the Plan (whether to occur before, on or after the Effective Date).   All matters provided for in the Plan involving the corporate structure of the Debtor or the Reorganized Debtor, and any corporate action required by the Debtor or the Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the managers, members or officers of the Debtor or the Reorganized Debtor.   On or (as applicable)

before the Effective Date, the appropriate managers or officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, company agreements, operating agreements and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor, including the Exit Facility and any and all other agreements, documents, securities and instruments relating to the foregoing. The authorizations and approvals contemplated by the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

19. <u>Section 1146(a) Exemption.</u> Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property in contemplation of, in connection with, or pursuant to the Plan shall not be subject to any stamp tax or other similar tax, and all state or local governmental officials or agents are directed to forgo the collection of any such tax and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax. Such exemption specifically applies, without limitation, to (i) the creation of any mortgage, deed of trust, lien or other security interest; (ii) the making or assignment of any lease or sublease; (iii) any restructuring transaction authorized by the Plan; or (iv) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan.

20. <u>Conversion of Priority Non-Tax Claims of Thomas D. Stikeleather to Class A Senior Reorganized Debtor Equity.</u> Pursuant to section 4.3 of the Plan, Mr. Stikeleather has agreed to convert his Priority Non-Tax Claim in the amount of $11,725.00 to Class A Senior Reorganized Debtor Equity. Accordingly, on the Effective Date, in full and final satisfaction of

Mr. Stikeleather's Priority Non-Tax Claim, Mr. Stikeleather shall receive $11,725.00 in Class A Senior Reorganized Debtor Equity.

21.     <u>Election Form for Holders of Priority Non-Tax Claims</u>.  Pursuant to section 4.3 of the Plan, the Reorganized Debtor will provide an election form to the Holder of a Priority Non-Tax Claim within five (5) Business Days of such Claim becoming an Allowed Claim, and the election form will provide that the Holder shall have fifteen (15) Business Days from the service of such notice (the "<u>Priority Non-Tax Claim Election Deadline</u>") to indicate whether it elects to convert all or any portion of its Allowed Priority Non-Tax Claim to Class A Senior Reorganized Debtor Equity.  If the Holder does not elect to convert its Allowed Non-Priority Tax Claim to Class A Senior Reorganized Debtor Equity, the Holder shall be paid in full in cash ten (10) Business Days after the Priority Non-Tax Claim Election Deadline.

22.     <u>Conversion of the Unsecured Claims of the Prior Funding Group, Thomas D. Stikeleather, and Montgomery Coscia Greilich, LLP to Class A Senior Reorganized Debtor Equity</u>.  Pursuant to section 5.11 of the Plan, as of the Effective Date, (i) the Prior Funding Group, which has Scheduled Claims in the total amount of $375,000; (ii) Thomas D. Stikeleather, with respect to $250,000 of his $336,625.00 Scheduled Claim on Schedule F; and (iii) Montgomery Coscia Greilich, LLP, with respect to its $41,505.00 Scheduled Claim, shall receive, in full and final satisfaction of such Claims, Class A Senior Reorganized Debtor Equity and Class B Reorganized Debtor Equity in accordance with section 5.10 of the Plan.

23.     <u>Election Form for Holders of Unsecured Claims.</u>  Pursuant to section 5.10 of the Plan, if the Holder of an Unsecured Claim has not already selected treatment A, B, or C on any Ballot submitted in connection with the MCG Plan, the Reorganized Debtor will provide an election form to the Holder of an Unsecured Claim within five (5) Business Days of such Claim

becoming an Allowed Claim, and the election form will provide that the Holder shall have fifteen (15) Business Days from the service of such notice (the "Unsecured Claim Election Deadline") to indicate whether it elects treatment A, B, or C. If the Holder makes no such election by the Unsecured Claim Election Deadline, the Holder will be deemed to have selected treatment A.

24.     Purchase by MCA of 50% of Allowed Unsecured Claims Electing Treatment C. In accordance with section 5.10 of the Plan, MCA shall purchase the Allowed Unsecured Claims from the Holders of Allowed Unsecured Claims that elect treatment C under the Plan. MCA shall make payments to Holders of Claims purchased under Treatment C thirty (30) days after Confirmation or thirty (30) days after the date the Claim becomes an Allowed Claim, whichever is later. MCA shall have the right to elect Treatment A or Treatment B for any portion of the claims purchased under Treatment C and may elect at its sole discretion to allocate the claims among both Treatments. The Reorganized Debtor and MCA commit that MCA shall acquire, as set forth in Treatment C of Class 10 Claims, no less than $550,000 of Allowed Unsecured Claims ("MCA Claims"). MCA shall not receive any payments on account of the MCA Claims under the Plan for the quarters beginning January, 2013 or March, 2013. Notwithstanding the Treatment in Class 10 under the Plan, MCA Claims will either: (i) receive Treatment B, and convert the MCA Claims into equity or (ii) upon the Reorganized Debtor failing to satisfy the 80% Test (as defined in the Plan and commencing on the quarter ending December 31, 2012) for two consecutive quarters, then MCA shall not be entitled to any unsecured creditor distributions until the Compass loan is paid in full.

25.     Preservation of Causes of Action.   In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released, the

Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtor expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after or as a consequence of the Confirmation or consummation of the Plan.

26. <u>Assumed Executory Contracts and Unexpired Leases</u>. Except as otherwise provided herein, each of the Debtor's Executory Contracts and Unexpired Leases shall be deemed assumed as of the Effective Date, unless such Executory Contract or Unexpired Lease: (a) was assumed or rejected previously by the Debtor; (b) expired pursuant to its own terms on or before the Effective Date; (c) is the subject of a motion to reject filed on or before the Effective Date; or (d) is identified as an Executory Contract or Unexpired Lease to be rejected pursuant to the Plan Supplement. Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption; provided however, that the Reorganized Debtor must pay any Cure Costs to the counterparty in accordance with the terms of the Plan and this Confirmation Order.

Confirmation Order

27.     As set forth in the Plan Supplement, and as specified in section 8.1 of the Plan, the prepetition employment agreements of the Debtor shall be deemed rejected as of the Effective Date.  In addition, (i) the Debtor's prepetition management agreement with Stanhope Management, (ii) any other prepetition contract with the Stanhope Entities, and (iii) any other Executory Contract or Unexpired Lease identified on the Plan Supplement to be rejected by the Reorganized Debtor [Dkt. No. 227] shall be deemed rejected as of the Effective Date.

28.     In accordance with section 8.1 of the Plan, the credit card servicing agreement of Compass, pursuant to which Compass is entitled to reimbursement for back charges and fees incurred within 180 days of any transaction processed by Compass on the Debtor's behalf, shall be deemed rejected on the Effective Date.  Compass shall be entitled to reimbursement for all chargebacks incurred during the 180 day period following termination.  The Reorganized Debtor shall establish and fund an account in the amount of $7,500 from which Compass may be paid for any such chargebacks.  After 180 days, any amounts remaining in the Chargeback Account shall be refunded to the Reorganized Debtor by Compass.

29.     Cure of Defaults.  The Reorganized Debtor shall cure all defaults existing under any assumed Executory Contract or Unexpired Lease pursuant to the provisions of section 1123(a)(5)(G) and 365 (b) of the Code, by paying the Cure Costs in connection with the Executory Contract or Unexpired Lease.  The Proponent shall file with the Court, and serve a list of the proposed Cure Costs on the counterparties within three (3) Business Days of the entry of the Confirmation Order.  To the extent that any counterparty disagrees with the proposed Cure Costs, such counterparty must serve written notice upon the Reorganized Debtor no later than October 19, 2012, and set forth in such notice the alleged amount of any Cure Costs.  If the Reorganized Debtor and the counterparty cannot agree to the amount of Cure Costs, the

Confirmation Order

Bankruptcy Court shall hold a hearing to determine the proper amount of the Cure Costs.    If the Reorganized Debtor and the counterparty agree to the amount of the Cure Costs, the Reorganized Debtor must pay such Cure Costs within ten (10) Business Days of October 19, 2012, or upon such other schedule as mutually agreed to by the Reorganized Debtor and the counterparty.

30.    Reservation of Rights to Assume or Reject.  In accordance with section 8.5 of the Plan, the Reorganized Debtor reserves the right to file applications for the assumption or rejection of any Executory Contract or Unexpired Lease at any time prior to 90 days after the Confirmation Date.

31.    Insurance Policies and Premium Finance Agreement.  In accordance with Article VIII of the Plan, all insurance policies pursuant to which the Debtor has any obligations in effect as of the date of the Confirmation Hearing shall be deemed treated as executory contracts pursuant to this Plan and shall be assumed by the Reorganized Debtor.  In addition, pursuant to the Order Granting Motion for Authority to Enter Into Premium Finance Agreement [Dkt. No. 132] (the "Premium Finance Order"), the Court authorized the Debtor to enter into the Premium Finance Agreement (as defined in the Premium Finance Order).  The Reorganized Debtor will assume the Premium Finance Agreement on the Effective Date.

32.    Discharge of Claims and Interests.  In accordance with section 13.6 of the Plan, pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, and except as otherwise provided in the Plan or in this Confirmation Order, the distribution, rights, and treatment that are provided in the Plan shall be in exchange for, and in full and final satisfaction, settlement, discharge, and release of, effective as of the Effective Date, all Claims and Interests (other than those Claims that are Unimpaired under the Plan) of any nature

Confirmation Order

whatsoever against the Debtor or any of its assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests.

33. Injunction. In accordance with Article XIII of the Plan, except as provided in the Plan or this Confirmation Order and to the fullest extent authorized or provided by the Bankruptcy Code, including sections 524 and 1141 of the Bankruptcy Code, as of the Confirmation Date, subject to the occurrence of the Effective Date, all Persons that have held, currently hold or may hold a Claim, Interest, or other debt or liability that is discharged, released or subject to exculpation pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtor or their property on account of any such discharged Claims, Interests, debts or liabilities or terminated rights: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such persons on account of or in connection with or with respect to any such claims or interests; (iii) creating, perfecting or enforcing any encumbrance of any kind against such persons or the property or estate of such persons on account of or in connection with or with respect to any such claims or interests; and (iv) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released, settled or discharged pursuant to the plan.

34. Continuation of Automatic Stay. Except as otherwise expressly provided in the Plan, this Confirmation Order or separate order of this Court, all injunctions or stays provided for in this Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in

Confirmation Order

existence on the Confirmation Date, shall remain in full force and effect through and including the Effective Date.

35. <u>Retention of Jurisdiction.</u>  In accordance with Article XII of the Plan, this Court shall retain jurisdiction over any matter pertaining to the implementation and enforcement of the Plan and this Confirmation Order.

36. <u>Binding Effect.</u>  The provisions of the Plan and this Confirmation Order shall be, and hereby are now, and forever afterwards, binding on the Debtor, the Reorganized Debtor, all holders of Claims and Interests (whether or not Impaired under the Plan and whether or not, if Impaired, they have accepted the Plan), and any other party making an appearance in this Chapter 11 Case, as well as their respective heirs, successors, assigns, trustees, subsidiaries, affiliates, officers, directors, agents, employees, representatives, attorneys, beneficiaries, guardians, and similar officers, or any person claiming through or in the right of any such person or entity.

37. <u>Technical Adjustments.</u>  Prior to the Effective Date, the Debtors may make appropriate technical adjustment and modifications to the Plan without further order or approval of this Court, *provided* that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Allowed Claims or Interests.

38. <u>Inconsistency.</u>  In the event of an inconsistency between the Plan and any other agreement, instrument, or document intended to implement the provisions of the Plan, the provisions of the Plan shall govern.  In the event of any inconsistency between the Plan and any agreement, instrument or document intended to implement the Plan, and this Confirmation Order, the provisions of this Confirmation Order shall govern.

Confirmation Order

39. <u>Notice of Effective Date.</u>  No later than ten (10) Business Days after the occurrence of the Effective Date, the Reorganized Debtor shall serve a Notice of Effective Date on all Holders of record of Claims and Interest as of the Confirmation Date, all parties who have entered their appearance in the Chapter 11 Case and who have requested notice pursuant to Bankruptcy Rule 2002, and the Office of the United States Trustee.  The Notice of Effective Date shall inform the Holders of Claims and Interests of (a) entry of the Confirmation Order; (b) the occurrence of the Effective Date; (c) the applicable Bar Dates; and (d) such other matters as the Reorganized Debtor deems to be appropriate.

# # # END OF ORDER # # #

Submitted by:

**Jonathan S. Covin**
**Eric M. Van Horn**
**Wick Phillips Gould & Martin LLP**
**2100 Ross Avenue, Suite 950**
**Dallas, Texas 75201**
**P: 214-692-6200**
**F: 214-692-6255**

**Counsel for MCG Venture Partners, L.P.**

Confirmation Order